# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| KING RECORDS, INC., | ) | |
| | ) | **Case No. 3:00-0299** |
| Plaintiff, | ) | **Judge Nixon** |
| | ) | **Magistrate Judge Griffin** |
| v. | ) | |
| | ) | |
| KENNETH R. BENNETT d/b/a | ) | |
| KRB MUSIC COMPANIES and | ) | |
| KRB MUSIC COMPANIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

This is a copyright infringement lawsuit involving one musical composition copyright and twenty-one sound recording copyrights.  Plaintiff King Records, Inc. ("Plaintiff" or "King") filed a three-count Complaint against Defendants Kenneth Bennett ("Bennett"), d/b/a KRB Music Companies and KRB Music Companies, Inc. ("KRB," together with Bennett, "Defendants").  Count I alleged the copyright infringement of a musical composition entitled "Don't Fall Asleep at the Wheel." Count II alleged copyright infringement of twenty-one sound recordings.  Count III alleged the unlawful duplication of noncopyrightable sound recordings protected under the common law.  A bench trial was conducted between July 21, 2003, and July 25, 2003.

The Court addresses the merits of this case in the contemporaneously filed Memorandum. In addition to the ultimate issues, also pending before the Court are the parties' motions in limine (Doc. Nos. 147, 148, 149, 150, 151, 180, 182, 186), filed with accompanying memoranda, and responses (Doc. Nos. 155, 156, 157, 158, 159, 185, 191, 192).  The parties, at the request of the

Court, also filed motions to strike with accompanying memoranda (Doc. Nos. 207, 208), responses (Doc. Nos. 212, 213), and a reply (Doc. No. 214). Plaintiff has also filed a motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure, to which Defendants have responded in opposition, and Plaintiff replied (Doc. Nos. 216, 217, 218, 219, 220). Plaintiff filed a motion to dismiss without prejudice Count III of the Amended Complaint (Doc. No. 206), to which Defendants responded in opposition (Doc. No. 211), and Plaintiff replied (Doc. No. 215).

For the reasons set forth below, the Court **DENIES** as **MOOT** the motions in limine, and **DENIES** the motions to strike and Plaintiff's motion for sanctions. Plaintiff's motion to dismiss Count III of its complaint without prejudice is **GRANTED**.

## I.     MOTIONS IN LIMINE

### A.     DEFENDANTS' MOTION IN LIMINE NO. 2

Defendants sought to preclude Plaintiff from introducing pleadings and orders in cases filed by Plaintiff against various third parties, including, James R. Horner ("Horner"), President of Classic Sound, Inc. ("Classic Sound") and Peachtree Music, Inc. ("Peachtree"). (Doc. No. 147.) In addition, Defendants sought to preclude Plaintiff from introducing a settlement agreement, dated August 20, 1999 between Plaintiff, Horner, Classic Sound and Peachtree, among others. (Id.)

Defendants argued that these documents should not be admitted because they are not binding on Defendants, who were not involved in any of the cases. (Id. at ¶ 2.) Similarly, Defendants contend that the documents are irrelevant as they have "no bearing on the issue of Plaintiff's ownership and on whether the Defendants infringed on that ownership . . . ." (Id. at ¶

Case 3:00-cv-00299   Document 226   Filed 06/20/06   Page 2 of 23 PageID #: 2

4.)  Thus, Defendants sought to exclude them pursuant to Rules 401-402 of the Federal Rules of Evidence.  (Id.)  In addition, Defendants asserted that the settlement agreement in particular is inadmissible, as Defendants had no knowledge of it and it is an out of court statement that does not satisfy any hearsay exception.  Plaintiff responded that the pleadings and the settlement agreement are relevant because they bear directly on Defendants' knowledge that they were infringing on Plaintiff's musical composition and sound recordings at issue in this case.  (Doc. No. 155.)  Plaintiff argues that Defendants' hearsay objection regarding the settlement agreement is without merit, as Defendants will be able to cross-examine Gayron C. "Moe" Lytle ("Lytle"). (Id. at 2.)

Judge Echols[1] previously ruled that he would take the motion under advisement and requested Defendants to reassert their motion at trial.  Judge Echols indicated, however, that

> if it relates to ownership rights for identification of the titles and helps clarify any
> other issues in this case, it may be admissible.  Although if the defendants
> were not parties to that agreement, they may not be bound by it.  But it may relate
> to knowledge of what the defendants knew, when they knew it and also may
> relate to whether or not the plaintiffs in fact did obtain the rights to certain works
> through a settlement agreement.

(Doc. No. 175 at 10-11.)

Plaintiff introduced certain of these documents at trial as Plaintiff's Exhibits 241, 242, 244.  (Doc. No. 201, Trial Tr. III at 117-121.)  Defendants did not object to their admission or file a motion to strike after trial.  As a result, their motion is MOOT.  Nevertheless, as this case was reassigned shortly before trial, and it is unclear from Judge Echols' prior ruling whether Defendants were required to reassert their motion, the Court finds it necessary to explain that

---

[1]  Due to a criminal matter in Judge Echols' Court, this case was reassigned to the undersigned three days prior to trial.  (See Doc. No. 184.)

Case 3:00-cv-00299   Document 226   Filed 06/20/06   Page 3 of 23 PageID #: 3

these documents would be admitted notwithstanding Defendants' objections.

First, only evidence that is relevant to the case is admissible. Fed. R. Evid. 402. Relevant evidence is defined as "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The Court finds that Plaintiff's Exhibits 241, 242 and 244 are relevant to the present proceedings. These exhibits show that Plaintiff sued Horner and his companies, Classic Sound and Peachtree, for copyright infringement, among other illegal uses, of Plaintiff's sound recordings and musical compositions. Defendants licensed the right to manufacture, reproduce, distribute and sell the musical composition and sound recordings in Count I and II of this case from Horner. As a result, the cases and settlement agreement are relevant to show whether Defendants had, or should have had, knowledge that Horner may have been licensing a musical composition and sound recordings to which he did not have the rights.

Second, the parties dispute whether the settlement agreement is inadmissible hearsay. Before turning to the hearsay rules, it is necessary to determine whether the settlement agreement is admissible under Rule 408 of the Federal Rule of Evidence, which governs the admission of evidence of settlement offers and agreements. Generally, a settlement agreement is inadmissible to provide liability or damages. However, such an agreement is admissible when it is "offered for another purpose." Fed. R. Evid. 408. See also Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976, 981 (6th Cir. 2003) (holding settlement communications from a previous case could not be admitted to demonstrate liability, but could be introduced for "another purpose" such as proving a relationship existed between the parties of the agreement). Following this rule, the settlement agreement is inadmissible to show Plaintiff's

-4-

ownership in any sound recordings and musical composition or that Horner, Classic Sound or Peachtree stipulated and acknowledged that they engaged in copyright infringement, among other illegal uses, of Plaintiff's sound recordings and musical composition. The settlement agreement, however is admissible to demonstrate whether Defendants had, or should have had, knowledge that Horner may have been licensing a musical composition and sound recordings to which he did not have the rights. As the settlement agreement is not being introduced, and is inadmissible to prove, that a) Plaintiff owns the musical composition and sound recordings involved in this case; b) the musical composition and sound recordings in Count I and II are the same as the ones in the agreement; or c) that Horner, Classic Sound or Peachtree illegally licensed the musical composition and sound recordings in Count I and II to Defendants, it is not offered to prove the truth of the matter asserted. See Fed. R. Evid. 801. As a consequence, the contents of the settlement agreement regarding liability is not binding on the Defendants. In sum, Defendants' Motion In Limine No. 2 is DENIED.


### B.    DEFENDANTS' REMAINING MOTIONS IN LIMINE

Defendants' Motion In Limine No. 3 sought to preclude Plaintiff from introducing or seeking damages relating to any sound recordings not specifically identified in the Plaintiff's Amended Complaint. (Doc. No. 148.) Plaintiff initially responded in opposition. (Doc. No. 156.) At the hearing before Judge Echols, Defendants' counsel stated: "The plaintiff did concede what we were seeking. They were not going to seek at trial to recover for any damages for items not listed as [an] exhibit or in the amended complaint." (Doc. No. 175 at 12.) Accordingly, Defendants' Motion In Limine No. 3 is DENIED as MOOT.

Defendants' Motion In Limine No. 4 sought to exclude Steven Riley, certified public accountant, of the firm Frazier, Dean & Howard as an expert on behalf of Plaintiff. (Doc. No. 149.) Plaintiff initially responded in opposition. (Doc. No. 157.) At the hearing before Judge Echols, Plaintiff's counsel conceded that they would not call Mr. Riley as an expert, but requested that he be permitted to attend the trial and testify if any information regarding damages was elicited during the trial. (Doc. No. 175 at 16.) At trial, Plaintiff did not renew its request to this Court to permit Mr. Riley to testify. Consequently, Defendants' Motion In Limine No. 4 is DENIED as MOOT.

Defendants' Motion In Limine No. 5 sought to exclude Michael S. Stone of Stone & Associates, Inc. from testifying as an expert on behalf of Plaintiff in the event that Defendants did not have the opportunity to depose Mr. Stone. (Doc. No. 150.) Plaintiff responded in opposition (Doc. No. 158.) Defendants had the opportunity to depose Mr. Stone (Doc. No. 176 at 7-8) and did not raise any further objections to this Court about Mr. Stone testifying as an expert on behalf of Plaintiff. As a result, Defendants' Motion In Limine No. 5 is DENIED as MOOT.

Defendants' Motion In Limine No. 6 sought to preclude Plaintiff from introducing evidence of "any alleged common law copyright infringement for the products in Count III of the Amended Complaint during the period from January 1, 1998 through December 31, 2002, during which Plaintiff did not have the rights to the master recordings upon which it seeks to recover." (Doc. No. 151 at 1.) At the beginning of trial, Plaintiff moved for a dismissal without prejudice of Count III of the Amended Complaint. (See Doc. No. 199, Trial Tr. I at 6, 28-29.) Accordingly, this motion is DENIED as MOOT.

-6-

Finally, Defendants filed a Motion In Limine to Exclude Use of Deposition Testimony Pursuant to Rule 32 of the Federal Rules of Civil Procedure. (Doc. No. 182.) Plaintiff responded in opposition (Doc. No. 185), to which Defendants replied (Doc. No. 192). The parties reached an agreement as to which depositions they sought to introduce and the Court permitted the admission of those depositions, as well as the deposition of Greg Welch. (Doc. No. 202, Trial Tr. V at 4-5, 18-19, 208.) Accordingly, this motion is DENIED as MOOT.

### C.    PLAINTIFF'S MOTIONS IN LIMINE

Plaintiff filed a Motion In Limine seeking to exclude Mary P. Kuehn ("Kuehn") as a witness at trial and from relying upon the deposition testimony of Kuehn as well as documents she produced. (Doc. No. 180.) Defendants responded in opposition. (Doc. No. 191.) This Court permitted Kuehn to testify and requested any opposition to her testimony to be presented in a motion to strike post-trial. (Doc. No. 201, Trial Tr. III at 2.) After trial, Plaintiff filed a motion to strike, which the Court has considered. See infra Section II.B.. Accordingly, this motion in limine is DENIED as MOOT.

Plaintiff filed a Motion In Limine to preclude Defendants from relying upon any portion of the deposition testimony of Richard Gosting a/k/a Dick St. John relating to a certain cassette tape which allegedly contained a recording of "The Mountain's High," a sound recording which is involved in Count II. (Doc. No. 186.) In lieu of filing a response, Defendants resolved this dispute and together with Plaintiff submitted agreed upon designations of the deposition of Dick St. John and exhibits thereto. (Doc. No. 197.) Accordingly, this motion is DENIED as MOOT.

-7-

-8-

## II.    MOTIONS TO STRIKE

### A.    PLAINTIFF'S MOTION TO STRIKE CERTAIN EXHIBITS

Plaintiff has moved the Court to strike certain testimony and exhibits presented during the cross examination of Moe Lytle ("Lytle") (Doc. No. 207).  First, Plaintiff seeks to strike all testimony related to a settlement agreement that resolved another lawsuit, G.M.L., Inc. v. John LaMonte, et al., Case No. 3-90-0181 (M.D. Tenn.), and by which Lytle acquired the right to exploit certain master recordings.  Plaintiff asserts that this settlement agreement related only to a catalog of master recordings known as the Springboard Catalog, which were the subject of the dismissed Count III of Plaintiff's Amended Complaint.  Plaintiff contends that this settlement agreement has no relevance to the issues that were tried in this action.  Plaintiff's request to strike this exhibit is denied because the Court did not grant Plaintiff permission to challenge it post trial, it was admitted unconditionally as Defendants' Exhibit 82A, and the Court allowed Defendants' counsel to continue his line of questioning with respect to it.

The Court did grant Plaintiff permission to file a motion to strike Defendants' Exhibit 82B, which is a copy of an agreement between Red Dog Express, Inc. and Creative Sounds Ltd.  Plaintiff does not, however, present any argument or in any way request the Court to strike Defendants' Exhibit 82B (Doc. No. 207).

In any event, Plaintiff's motion to strike either Defendants' Exhibit 82A or 82B is precluded by the fact that Lytle testified on direct examination that John LaMonte, the principal of Creative Sounds Ltd., and Red Dog Express, Inc. were not reputable distributors of music.  Defendants were permitted to cross-examine Lytle regarding that allegation.  Similarly, these documents are relevant because Defendants' sources for most of the sound recordings in Count

-9-

II were Red Dog Express, Inc. and Creative Sounds Ltd.  Consequently, Defendants Exhibit 82A and 82B are relevant and Plaintiff's motion to strike either or both of them is DENIED.  For the same reasons, Plaintiff's motion to strike any of Lytle's testimony relating to these exhibits is also DENIED.

Plaintiff also moves the Court to strike Defendants' Exhibit 96, and any testimony relating to it.  As Defendants note in their response in opposition to Plaintiff's motion to strike (Doc. No. 213), Defendants' Exhibit 96, which is the Judgment issued by the Bankruptcy Court for the Eastern District of Louisiana, No. 96-1125, was not admitted into evidence, but marked for identification purposes only.  (Doc. No. 202, Trial Tr. Vol. 5 at 142.)  Any questioning of Lytle related to Defendants' Exhibit 96 was appropriate impeachment testimony regarding Plaintiff's ownership of the sound recordings.  Thus, Plaintiff's motion to strike this testimony is DENIED.

### B.  PLAINTIFF'S MOTION TO STRIKE KUEHN'S TESTIMONY AND RELATED DOCUMENTS

Plaintiff asks the Court to strike the testimony of Kuehn, and to preclude Defendants from relying upon any documents produced by Kuehn (Doc. No. 208).  Kuehn is an employee of K-Tel Records ("K-Tel"), which recorded master recordings of some of the same titles that are at issue in Count II.  (See Section I.C of the contemporaneously filed Memorandum Order for a more detailed explanation of K-Tel and its recordings.)

First, Plaintiff argues that Kuehn's testimony should be stricken from the record because KRB achieved an "[un]fair advantage" by disclosing Kuehn as a possible witness so close to trial.  (Id. at 2.)  Plaintiff submits that KRB had been "in contact with Kuehn since at least

January 2003," yet Defendants made her available for deposition only a week before trial. Moreover, Plaintiff claims that many of the documents Kuehn claimed to authenticate were produced only one and a half days before the deposition, and others only hours before her deposition was taken.

Second, Plaintiff contends that Kuehn's testimony about the K-Tel master recordings is irrelevant, as Defendants introduced no evidence that either KRB products or Plaintiff's recordings were created from the K-Tel master recordings. Similarly, Plaintiff claims that the fact that both Plaintiff and K-Tel recorded the same songs by the same artists does not suggest any illegal behavior and is irrelevant. (Id. at 4.) Finally, Plaintiff maintains that the testimony Kuehn presented regarding a settlement agreement involving Lytle is only relevant to Count III, which Plaintiff sought to dismiss without prejudice at the start of trial. (Id. at 3.) Plaintiff contends that Kuehn's testimony simply clouds the record and should be stricken.

Defendants claim that they disclosed Kuehn as a "may call" witness within the time proscribed by Judge Echols, and that Judge Echols granted Plaintiff's request to take Kuehn's deposition. With respect to relevancy, Defendants assert that "Kuehn's testimony is directly relevant to the vast majority of Count II sound recordings from which Plaintiff claims as its source of right an assignment from Louis Lofredo's company, Mandela International, Inc. ("Mandela")." (Doc. No. 212 at 2.) Defendants argue that Kuehn's testimony is also relevant as it "either dovetails or directly conflicts with–the testimony of three (3) witnesses: (1) Mike Stone, (2) the deposition testimony of Dick St. John of the recording duo known as Dick & Dee Dee, and (3) Mr. Lytle." (Id. at 3.)

Contrary to Plaintiff's suggestion, Kuehn's testimony is probative of Plaintiff's

ownership of the sound recordings at issue. The detailed discussion of the K-Tel agreements and recordings in the contemporaneously filed Memorandum demonstrate their relevance. Plaintiff was not prejudiced by her testimony or the documents related to her testimony, as Plaintiff deposed Kuehn prior to trial and had sufficient time to review the documents. Accordingly, Plaintiff's motion to strike is DENIED.


## III.    PLAINTIFF'S MOTION TO DISMISS COUNT III OF THE COMPLAINT

Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, Plaintiff made an oral motion to voluntarily dismiss Count III of this action during its opening statement on the first day of trial. Count III involved the alleged infringement upon Plaintiff's rights in forty sound recordings that are allegedly protected by the common law, rather than the Copyright Act. Plaintiff argues that its motion to dismiss Count III was made necessary because Defendants "produced certain documents only days before trial." (Doc. No. 206 at 2.) Specifically, Plaintiff refers to documents obtained from Defendants' witness Kuehn, and documents such as settlement agreements from other lawsuits and deposition transcripts that were not produced until the middle of trial during the cross-examination of Lytle. Plaintiff asserts that "[p]roceeding to trial in light of such evidence would have prejudiced King's case." (Id. at 3.) In contrast, Plaintiff contends that a voluntary dismissal of Count III will not prejudice Defendants.

Defendants urge the Court to dismiss Count III with prejudice and to award Defendants their costs and reasonable attorney fees and expenses incurred in the defense of the allegations included in Count III. As support, Defendants point out that Count III contained two-thirds of

-12-

the sound recordings at issue in the Amended Complaint and five separate causes of action, both tortious and statutory. Defendants complain that Plaintiff's oral motion for voluntary dismissal was untimely and without notice. Significantly, the oral motion was unaccompanied by <u>any</u> explanation, let alone a reasonable explanation. Plaintiff simply stated that it "is not going to proceed this morning and moves for a voluntary dismissal of" Count III. (Doc. No. 199, Trial Tr. at 6.) Defendants assert that this late and unexplained request for dismissal is prejudicial because Defendants have incurred significant expense in discovery and preparing for trial. Moreover, the post-trial excuse that Plaintiff did not receive certain documents from Defendants until shortly before trial is unreasonable, as the documents were unrelated to Count III.

Rule 41(a)(2) of the Federal Rules of Civil Procedure states in pertinent part, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper . . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice." Whether a court should grant a dismissal under Rule 41(a)(2) is within the discretion of the district court. <u>Grover v. Eli Lilly and Co.</u>, 33 F.3d 716, 718 (6th Cir. 1994). Indeed, "the last sentence of Rule 41(a)(2) implicitly permits the district court to dismiss an action with prejudice in response to a plaintiff's motion to dismiss without prejudice." <u>United States v. One Tract</u>, 95 F.3d 422, 425 (6th Cir. 1996). In order to dismiss an action <u>with prejudice</u>, the court must find that the defendant would suffer "'plain legal prejudice,' as a result of a dismissal <u>without prejudice</u>, as opposed to facing the mere prospect of a second lawsuit." <u>Grover</u>, 33 F.3d at 718. The factors to consider whether a defendant will suffer plain legal prejudice include:

> defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecution of the action, insufficient

-13-

explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant.

Id.  In addition, the court must:

> give the plaintiff notice of its intention to dismiss with prejudice.  Second, the plaintiff is entitled to an opportunity to be heard in opposition to dismissal with prejudice.  Third, the plaintiff must be given an opportunity to withdraw the request for voluntary dismissal and proceed with litigation.  This third requirement is essential because, unlike a dismissal without prejudice, a dismissal with prejudice operates as a rejection of the plaintiff's claims on the merits and res judicata precludes further litigation.

One Tract, 95 F.3d at 425-26 (citations omitted); see also O'Hara v. Bd. of Educ. of Brooklyn City Sch. Dist., 72 Fed. App'x 311, 315 (6th Cir. 2003) (same).

In the instant matter it is clear that Defendants expended considerable effort and expense in the preparation of trial, their presentation of evidence regarding Count I and II was not as streamlined as it could have been because it did not have advance notice that the claims in Count III would be dismissed.  Further, as explained in the contemporaneously filed Memorandum Order, while Defendants' discovery conduct was far from exemplary, Plaintiff also did not conduct efficient discovery and lacked diligence in prosecuting this action.

Most importantly, the Court finds that Plaintiff has given an insufficient and unreasonable explanation for the need to dismiss Count III.  Plaintiff contends that its presentation of Count III was hampered by the last minute production by Defendants of "certain" documents.  Plaintiff complains about documents produced by Kuehn; the fact that Defendants produced documents such as settlement agreements and deposition transcripts from other cases during Lytle's cross-examination of which Plaintiff had no prior notice; and the lack of actual, accurate damages information.  Plaintiff's reasons are unpersuasive.

First, Plaintiff does not specify the exact documents which hampered its presentation of

-14-

Count III.  Second, the documents Kuehn offered related to Count II and not to Count III.  Third, the "other" documents that Defendants used during Lytle's cross-examination related to prior litigation that Lytle <u>himself</u> had initiated against other parties, and were appropriately used for impeachment purposes.  This reason is especially unfounded because Plaintiff's request for dismissal of Count III came on the <u>first day of trial</u>.  In contrast, the documents used during Lytle's cross-examination regarding which Plaintiff allegedly did not receive notice <u>came much later in the trial</u>.  Plaintiff could not have based its oral dismissal request on the future use of documents of which it allegedly had no knowledge.  Fourth, with regard to the lack of damages information, Plaintiff was well-aware far in advance of trial that it had been unable to obtain the information it sought.  It had filed numerous motions with the Court regarding this issue and even had the opportunity to inspect Defendants' vendor files, but declined to do so.  These reasons just do not justify the request for dismissal <u>on the very first day of trial</u>.

Nevertheless, the Court must reluctantly grant Plaintiff's request for dismissal without prejudice, as it did not give Plaintiff an opportunity to withdraw the request for voluntary dismissal and proceed with the litigation of Count III.  <u>One Tract</u>, 95 F.3d at 425-26.[2]  In addition, the Court notes that while Defendants have suffered some prejudice, they have not suffered sufficient "legal" prejudice, and simply face the prospect of a second lawsuit.  Thus, the Court hereby GRANTS Plaintiff's motion to dismiss Count III WITHOUT PREJUDICE.

Defendants' request for attorney fees and costs is DENIED for two reasons.  First, it is uncertain whether Defendants can obtain attorney fees on a voluntary motion to dismiss after the

---

[2]  The Court notes that the other two factors listed in <u>One Tract</u> have been satisfied as the Plaintiff was aware that the Court was considering a dismissal with prejudice due to Defendants' motion and Plaintiff had sufficient opportunity to be heard.

Supreme Court's decision in <u>Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.</u>, 532 U.S. 598, 603-04 (2001). There, the Supreme Court denied petitioner attorney fees after respondent moved to dismiss the case as moot because there was no "court-ordered" change, or some sort of "judicial imprimatur," that altered the parties' legal relationship. Second, Defendants' discovery conduct, as described in the contemporaneously filed Memorandum, precludes an award of costs.

## IV. PLAINTIFF'S RENEWED REQUEST FOR SANCTIONS FOR THE INTENTIONAL DESTRUCTION OF EVIDENCE

Plaintiff urges the Court to impose sanctions against Defendants for their alleged intentional destruction of documents known as "matrices" (Doc. No. 216). A matrix is a form in Defendants' Navision accounting system that provides a snapshot in time of what product is available or included in the product shipped to Big Lots stores. Defendants' business policy is to manually delete these matrices every sixty to ninety days. Defendants stated that they do not have any matrices regarding the musical composition and sound recordings at issue prior to the filing of the Complaint in April 2000 because they were deleted in the ordinary course of business. After the initiation of the lawsuit, however, Defendants continued to delete these matrices in their regular course of business and did not stop this practice until ordered to do so by Judge Echols in December 2002. Plaintiff now seeks sanctions for the destruction of the matrices from April 2000 to December 2002.

Plaintiff's motion for sanctions was first addressed by Judge Echols in an Memorandum entered December 3, 2002 (Doc. Nos. 82). At that time, Judge Echols held: "The Court finds

-16-

that it will need <u>further evidence on the relevance</u> of the information stored on the computer matrices and the <u>reasons</u> Defendants have been routinely deleting this information before it can adequately rule on the imposition of sanctions.  Therefore, the Court will reserve ruling on Plaintiff's request until trial.  However, Defendants will be ordered to discontinue [their] . . . policy of deleting this information until the case is concluded."  (<u>Id.</u> at 9) (emphasis added).

Judge Echols' ruling requiring the relevance of the matrices and the reasons for their destruction is consistent with the rationale courts use to decide sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure.  As one court explained:

> Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information.  While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.

<u>Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc.</u>, 593 F. Supp. 1443, 1455 (C.D. Cal 1984). In considering whether to impose sanctions or draw an adverse inference from the destruction of documents, "'[t]he crucial element is not that evidence was destroyed but rather the reason for the destruction."  <u>Park v. City of Chicago</u>, 297 F.3d 606, 615 (7th Cir. 2002).  That is, the party destroying the evidence must have done so in bad faith.  <u>Tucker v. Gen. Motor Corp.</u>, No. 91-3019, 1991 WL 193458, at *2 (6th Cir. Sept. 30, 1991).  Thus, the Court will review the relevance of the matrices and the reasons why they were destroyed.

### A.  RELEVANCE OF MATRICES

Plaintiff argues that the matrices are relevant because they are the <u>only</u> source of information concerning Defendants' sales of the musical composition and sound recordings in this case. Plaintiff complains that although Defendants contended that the information on the matrices was available in other formats, such as an Item Ledger Table and the Licensed Item Usage Information Report, those reports were never produced even though they were easy to create and print out. Even if they had been produced, contends Plaintiff, the Licensed Item Usage Information Report is subject to manipulation because the creator of the report can "label" columns. Plaintiff argues that "the only accurate way to disclose all transactions for a particular title would be to print an Item Ledger and compare the information in that ledger to business records . . . such as general and subsidiary ledgers." (Doc. No. 216 at 16.) In addition, Plaintiff asserts that other documents that would include information that is in the matrices, such as accounts payable reports, inventory schedules and the like were not produced.

In contrast, Defendants argue that a matrix is not relevant because it is only a snapshot in time and does not show the actual usage of a product. Such information is included in item ledger entries in Navision. Further, Defendants state that even if the matrices are considered to be relevant, the underlying information regarding the usage of the titles at issue was maintained in the Navision system. This is because any activity regarding a particular title is posted in the Navision system and cannot be deleted thereafter. In keeping with their argument that the underlying information was not destroyed, Defendants point to the fact that they provided Plaintiff with several more relevant documents such as Purchase Orders and Posted Purchase Invoices, Licensed Item Usage Information Reports, and Posted Invoices, among other things.

Importantly, the Court notes that Plaintiff seeks sanctions for the destruction of matrices

-18-

created from April 2000 to December 2002.[3]  Defendants argue that such matrices would have

been irrelevant because Defendants issued "freeze" memoranda to its employees that blocked the

sale of the titles identified in the Complaint.  Therefore, the matrices created after the lawsuit

would not include information about the titles identified in the Complaint and are irrelevant.

Plaintiff argues that notwithstanding the "freeze" memoranda, Defendants continued to sell the

titles identified in the Complaint and the matrices are the only documents that would have

proved that.  Plaintiff points to the fact that it found certain titles in the cassette inspection as

indicative that Defendants continued to sell these products.  As explained in its

contemporaneously filed Memorandum, the Court accepts Defendants' explanation that the

cassettes found in the inspection were sold prior to the lawsuit and were inadvertently not

removed by Defendants' service representatives or tardily returned by Big Lots.  Thus, the Court

does not agree that the presence of a small number of cassettes in the cassette inspection is

indicative of a post-Complaint sales of the titles at issue in this case.

　　　　Even if the post-Complaint matrices are relevant pursuant to Rule 401 of the Federal

Rules of Evidence, the information contained therein was available on other documents, and the

destruction of the matrices did not preclude the discovery of admissible evidence.  Plaintiff

conceded that the Licensed Item Usage Information Reports and the Item Ledger Report would

include such information.  Defendants <u>did</u> produce the Licensed Item Usage Information

Reports.  Plaintiff, however, argues that this report could be manipulated and, therefore, the ones

produced by Defendants were inaccurate.  There is no evidence to support Plaintiff's

_____

　　　[3]  Plaintiff states that "since Judge Echols' December 2003 Order requiring Defendants to
discontinue destruction of the matrices, Defendants have destroyed such matrices on at least
fifteen separate occasions."  There is <u>no</u> proof to support this allegation.

manipulation theory.

In essence, Plaintiff contends that the only document that would have satisfied Defendants' discovery obligation would have been a customized Item Ledger Report. "A party is not required to 'prepare, or cause to be prepared,' new documents solely for their production." Alexander v. F.B.I., 194 F.R.D. 305, 310 (D.D.C. 2000). Therefore, Defendants were under no obligation to produce a customized Item Ledger Report. Further, Plaintiff complains that the Licensed Item Usage Information Reports were subject to manipulation because Defendants could "label" columns in a certain way. Then, in an apparent change in position, Plaintiff requests a customized Item Ledger Report. The creation of such a customized Item Ledger Report would also require some "manipulation" by Defendants, because such customized reports are not created in the ordinary course of their business.

All that remains of Plaintiff's argument, then, is that it should have had the opportunity to review the Item Ledger Report. This extraordinary relief was already considered and denied by the Magistrate Judge and Judge Echols. Plaintiff's current motion for sanctions is essentially a repetition of the argument already made before the Magistrate Judge. (See Doc. No. 97 (noting that "plaintiff contends that the defendants have not produced accurate records of sales of the titles at issue in this case").) In response to Plaintiff's complaints about damages discovery, the Magistrate Judge gave the Plaintiff the opportunity to have an independent certified public accountant review Defendants' vendor files from April 4, 1997 to December 31, 1997. "Depending on the results of such a review, the Court indicated that it would consider expanding a subsequent review to post 1997 vendor files." (Id. at 3) (emphasis added). Plaintiff, however, declined to have an independent certified public accountant conduct the review of Defendants'

1997 vendor files. Plaintiff did so believing that "such review was unnecessary and would be unproductive because an independent [certified public accountant] would not be familiar enough with the documents at issue to make meaningful findings . . . ." (Id. at 4-5.) Instead, Plaintiff sought the production of vendor files, as well as general ledgers or subledgers from 1997 to December 2002. (Id. at 4.) The Magistrate Judge denied Plaintiff's request finding that there was insufficient reason to amend its previous ruling to permit an independent review of 1997 vendor files, with the possibility of an expansion to post 1997 files.

Plaintiff was given the opportunity to review post-Complaint damages information only if the review of 1997 vendor files necessitated it. Plaintiff declined to even go ahead with the review of 1997 vendor files. It did so on the bases that it would "unnecessary," "unproductive," and not "meaningful" due to the independent certified public accountant's lack of familiarity with the documents. The Court seriously questions Plaintiff's view that just because an independent accountant would not be familiar with the facts in this case, he or she would not be able to analyze accounting documents to ascertain if certain titles were sold by KRB. Further, the Magistrate Judge, who was much more familiar with the discovery proceedings than the undersigned, denied the Plaintiff's request to view the general ledgers and subledgers. Moreover, Judge Echols affirmed this part of the Magistrate Judge's Order even though he reversed other aspects of it. (See Doc. No. 82.) The Plaintiff is essentially re-arguing its position in the form of a sanctions motion. As two Judges more involved in the details of discovery of this case than the undersigned declined to rule in Plaintiff's favor, so too does the undersigned.

In sum, the post-Complaint matrices are irrelevant. Even if they are relevant, the

information contained therein was available from other sources of documents that the Defendants produced.

**B.** **REASONS FOR DESTRUCTION OF MATRICES**

Finally, Plaintiff argues that Defendants did not provide any proof that the matrices need to be deleted every sixty to ninety days to control the <u>size</u> of their electronic database. Plaintiff misreads Theresa Pietsmeyer's testimony on this subject. She did not testify that the Navision database had to be maintained within a specific size. Rather, she stated that the "charge for maintaining the Navision database was done by controlling the database size. So when you outgrew your <u>current</u> database size [whatever that may be], you had to purchase <u>additional</u> database space so it was very important to keep the information in <u>as clean and efficient a mode as possible to avoid having to purchase database space unnecessarily</u>." (Doc. No. 205, Trial Tr. IV at 171-72) (emphasis added). Pietsmeyer's testimony is clear that KRB's policy was not to maintain a specific database size, but to purchase as little <u>additional</u> space as possible. Therefore, evidence regarding the size of the database is irrelevant, and the Court finds Pietsmeyer's explanation to be entirely adequate. Furthermore, Plaintiff has not proved any facts to demonstrate bad faith for the destruction of the documents.

In sum, Plaintiff has not borne its burden of showing why the matrices were more relevant than the damages documents produced by Defendants. Nor have they demonstrated that Defendants' stated reason for deleting the matrices is unreasonable. Given that Plaintiff has not explained the two factual issues Judge Echols wished to flesh out at trial, Plaintiff's sanctions motion is DENIED.

-22-

**V.    DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S RENEWED REQUEST FOR SANCTIONS AND PLAINTIFF'S REPLIES TO SEVERAL MOTIONS**

Also pending is Defendants' motion to strike Plaintiff's (1) renewed request for sanctions; (2) reply in further support of Plaintiff's motion to dismiss Count III; and (3) reply in further support of motion to strike (Doc. No. 217).  As the Court has considered both Plaintiff's and Defendants' post-trial motions on the merits, this motion is MOOT and the Court DENIES it in its entirety.

**VI.  CONCLUSION**

For the reasons stated herein, the Court **DENIES** as **MOOT** the parties' motions in limine (Doc. Nos. 147, 148, 149, 150, 151, 180, 182, 186); **DENIES** the parties' post-trial motions to strike (Doc. Nos. 207, 208, 217); **DENIES** Plaintiff's motion for sanctions (Doc. No. 216); and **GRANTS** Plaintiff's motion to dismiss Count III of its Amended Complaint **WITHOUT PREJUDICE** (Doc. No. 206).  Any remaining pending motions not discussed herein are **DENIED**.

It is SO ORDERED.

Entered this the  20th  day of June, 2006.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

-23-